UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MELVIN  STONE,                                     :

                              Petitioner,           :          **<u>MEMORANDUM DECISION</u>**

                 - v -                          :          20-cv-5548 (DC)

JIMMY JOHNSON, Superintendent of Green           :
Haven Correctional Facility,

                                       :

                       Respondent.

                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          MELVIN STONE
                      *Petitioner Pro Se*
                      DIN 18A330
                      Green Haven Correctional Facility
                      P.O. Box 4000
                      594 Route 216
                      Stormville, NY 12582

                      TIMOTHY D. SINI, Esq.
                      District Attorney, Suffolk County
                      By:     Nicole L. Gallo, Esq.
                              Assistant District Attorney
                      200 Center Drive
                      Riverhead, NY 11901
                              Attorney for Respondent

CHIN, Circuit Judge:

          On August 10, 2018, following a jury trial, petitioner Melvin Stone was

convicted in the Supreme Court of New York, Suffolk County (Cohen, *J.*), of first-degree

course of sexual conduct against a child, in violation of N.Y. Penal Law § 130.75(1)(b),

and second-degree criminal sexual act, in violation of N.Y. Penal Law § 130.45(1). Dkt. 9 at 13; Dkt. 8-2 at 60. On August 10, 2018, the court sentenced Stone to twenty-five years' imprisonment followed by twenty years of post-release supervision on the course of sexual conduct against a child count and seven years' imprisonment followed by ten years of post-release supervision on the criminal sexual act count. Dkt. 9 at 13. The court ordered the sentences to run concurrently. *Id.* The Appellate Division, Second Department affirmed his convictions, *People v. Stone*, 125 N.Y.S.3d 867 (2d Dep't 2020) ("*Stone I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Stone*, 155 N.E.3d 778 (N.Y. 2020) (Feinman, *J.*) ("*Stone II*").

On November 12, 2020, Stone filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court. Dkt. 1. Stone raises four grounds in his Petition: (1) insufficiency of the evidence; (2) ineffective assistance of trial counsel at the pre-trial investigation stage and based on trial counsel's failure to move for mistrial during summations; (3) prosecutorial misconduct during summation; and (4) ineffective assistance of trial counsel during sentencing. *Id.* at 5-10. The Suffolk County District Attorney's Office opposed the Petition on March 26, 2021. Dkt. 9. On December 8, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

### STATEMENT OF THE CASE

**I.   *The Facts*[1]**

The evidence at trial established the following:

Stone sexually abused his stepdaughter, M., from the time she was five

years old until she was fifteen.  In 2003, Stone moved into an apartment in Canarsie,

Brooklyn, where F., at the time his girlfriend of one year, lived.  Dkt. 9 at 2.  Also

residing in the apartment were F.'s two young children and Stone's infant child in

common with F.  *Id.*  One of F.'s children was M., who was then just shy of five years

old.  *Id.*

On the night of M.'s kindergarten graduation, when she was five years

old, Stone began to sexually abuse M.  *Id.*  Stone took M. from her bedroom that night

while she was asleep and brought her into a playroom in the apartment.  *Id.* at 3.  He

told her to put his penis in her mouth.  *Id.*  From that night on, this pattern of abuse took

place "almost every day" while Stone and F. lived in Brooklyn.  *Id.*

When M. was seven years old, the family moved to Far Rockaway,

Queens.  *Id.*  One night, when everyone else was still asleep, M. went to take a shower.

*Id.*  Stone entered the bathroom and inserted his penis into her vagina, causing M. to

---

[1]      The facts are primarily drawn from Respondent's affidavit submitted in opposition to the
Petition.  *See* Dkt. 9.  It is not necessary to give a more detailed recitation of the facts to resolve Stone's
habeas corpus petition.  Both Respondent's affidavit submitted in opposition to the Petition and
Respondent's brief to the Appellate Division contain more detailed recitations of the facts with extensive
citations to the trial record.  *See id.*; Dkt. 8-2 at 51-122.  Those more detailed -- and graphic -- recitations do
not bear repeating here.

bleed.  *Id.*  Stone continued abusing M. for the two years that they lived together in Queens.

In November 2008, when M. was nine years old, the family moved to Brentwood in Suffolk County.  *Id.* at 4.  F. and Stone were married by then, and M. had started referring to him as her father.  *Id.*  Stone continued to sexually abuse M. in the family's Brentwood residence.  *Id.* at 5.  In August 2009, following the loss of her newborn child -- M's half-brother -- F. went to live with her mother in Manhattan for "a few months."  *Id.* at 6.  During this period, Stone was the only adult in the Brentwood home, and he abused M. "[a]lmost every day."  *Id.*

Stone regularly bought M. gifts, such as sneakers, clothes, and phones.  *Id.* at 7.  He also gave her money, sometimes one hundred dollars at a time.  *Id.*  Even F. noticed that Stone spent more time with M. than with his biological children.  *Id.*  One day, when M. was twelve years old, she told Stone that she planned to tell F. about Stone's sexual abuse.  *Id.*  Shortly after that, M. discovered the family's small dog dead, hanging by its leash.  *Id.*  Stone asked M., "Did you see what I did?"  *Id.*

When she was fourteen years old, M. was left alone in the Brentwood home to take care of her younger siblings.  *Id.* at 8.  Stone and F. were separated, and Stone had moved out and was living at his girlfriend's house and F. was living in Manhattan again with one of M.'s half-brothers.  *Id.*  To eat, M. and her siblings stole food from grocery stores.  *Id.*  Eventually, M. told one of her brothers to tell someone at

4

school that he did not have enough to eat at home.  *Id.*  Following this report, a Suffolk

County Child Protective Services official visited the home.  *Id.*  A judge granted an

order requested by the Administration for Children's Services to remove the children

from the home.  *Id.*  M. went to live with her grandmother.  *Id.*  Eventually, M. began to

live with F. in the Bronx.  Dkt. 8-1 at 925.

In July 2017, when M. was eighteen years old, she left F.'s home in the

Bronx and stayed with her boyfriend.  Dkt. 9 at 9.  In August 2017, she told her

boyfriend's sister about the abuse.  *Id.*  Her boyfriend's sister told F. about what M. had

said.  *Id.*  Around two weeks after M. returned to F.'s home, M. and F. went to a police

station in the Bronx to report the abuse.  *Id.*

Detective Wonjin Noh of the New York City Police Department's Special

Victims Squad conducted initial interviews of F. and M.  *Id.*  After Detective Noh

learned that Stone abused M. in other jurisdictions, he notified the Brooklyn, Queens,

and Suffolk County Special Victims Units.  *Id.*  Subsequently, Detective Noh determined

that no crime had occurred in the Bronx.  *Id.* at 10.  Detectives in Brooklyn, Queens, and

Suffolk continued their investigations.  *Id.*

**II.**      ***The State Court Proceedings***

     **a.**      ***The Indictment and Pre-Trial Proceedings***

In 2017, Stone was indicted in Suffolk County for first-degree course of

sexual conduct against a child and second-degree criminal sexual act.  *Id.* at 2.  The

indictment alleged that Stone sexually abused M. in Suffolk County between November 2008 and May 2013. *Id.*

###### b.    The Trial

Trial began on June 18, 2018. Dkt. 8 at 60. The jury heard testimony from the People's witnesses: Detective Wonjin Noh, Dkt. 8-1 at 656-80; Alex Richardson, the evening school principal for Brentwood School District, *id.* at 680-701; F., M.'s mother, *id.* at 719-87, 800-51; M., *id.* at 860-1071; Michelle Calliste of New York City's Administration for Children's Services, *id.* at 1079-91; Detective Jeannette Morales of the Suffolk County Police Department's Special Victims Unit, *id.* at 1091-1130; Lori Lavelle-Jardin, a pediatric nurse practitioner who gave expert testimony on child sexual abuse, *id.* at 1164-87; and Dr. Anne Meltzer, a child psychologist who gave expert testimony on childhood abuse, *id.* at 1195-1223.

The defense presented a case and called five witnesses. *Id.* at 1231. The jury heard testimony from three of Stone's children with F. (and M.'s younger half-siblings), *id.* at 1231-73, 1307-17, 1317-23. Stone's son with another woman also testified, *id.* at 1274-89, as did one of Stone's ex-girlfriends with whom he shared a child, *id.* at 1289-1306. Stone did not testify. *Id.* at 1324-25. The People did not present a rebuttal case. *Id.* at 1325.

On July 10, 2018, the jury found Stone guilty of first-degree course of sexual conduct against a child and second-degree criminal sexual act. *Id.* at 1431-32.

### c.  The Sentencing Hearing

On August 10, 2018, the trial court sentenced Stone.  *Id.* at 1438.  The prosecution requested that Stone be sentenced to the maximum period of incarceration permissible under law and for the sentences to run consecutively.  *Id.* at 1441. Accordingly, the prosecution advocated for a total of thirty-two years' imprisonment followed by twenty years of post-release supervision.  *Id.*  Stone's defense counsel did not "suggest a specific number" to the court but argued for a term less than the maximum.  *Id.* at 1448.  Stone spoke on his behalf at sentencing and maintained that he never sexually abused M.  *See id.* at 1448-56.

The court sentenced Stone to a determinate sentence of twenty-five years' imprisonment followed by twenty years of post-release supervision on the first-degree course of sexual conduct against a child count, and seven years' imprisonment followed by ten years of post-release supervision on the second-degree criminal sexual act count. *Id.* at 1460.  The court ordered the sentences to run concurrently.  *Id.*

### d.  Direct Appeal

Stone appealed his convictions and sentence to the Appellate Division, Second Department, asserting the following claims:  (1) Stone was denied a fair trial and his Sixth Amendment right to effective assistance of counsel when trial counsel failed to move for a mistrial after the prosecutor committed misconduct during summation; (2) the trial court abused its discretion when it declined to allow trial counsel to cross-

examine M. on certain credibility matters, depriving Stone of his constitutional right to present a defense; (3) the trial court should have denied the prosecution's pre-trial *Molineux/Ventimiglia* application (to admit evidence of Stone's prior bad acts); (4) the evidence presented at trial was legally insufficient; and (5) the sentence was unduly harsh and excessive. *See* Dkt. 8-2 at 1-43.

On July 22, 2020, the Appellate Division affirmed Stone's convictions. *See Stone I*, 125 NY.S.3d at 868. The Appellate Division held that (1) Stone failed to preserve for appellate review his challenge to the legal sufficiency of the evidence supporting his convictions; (2) in any event, viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to establish Stone's guilt beyond a reasonable doubt, and the verdict was not against the weight of the evidence; (3) the trial court properly denied Stone's request to call a witness to contradict M.'s testimony on a collateral matter solely for the purpose of impeaching her credibility; (4) Stone failed to preserve for appellate review his claim that the prosecutor committed misconduct during summation and deprived Stone of a fair trial; (5) the prosecutorial misconduct claim was meritless, in any event, because the prosecutor's remarks "were within the broad bounds of rhetorical comment permissible in closing arguments," *id.*, and any impropriety was harmless; and (6) the sentence was not excessive. *Id.* at 868-69. Finally, the Appellate Division dismissed Stone's remaining contentions on the merits. *Id.* at 869.

8

On September 29, 2020, the New York Court of Appeals (Feinman, *J.*)

denied leave to appeal.  *Stone II*, 155 N.E.3d 778 (N.Y. 2020).

### e.  *State Collateral Review*

On September 6, 2019, Stone, through counsel, moved to vacate the

judgment of conviction pursuant to New York State Criminal Procedure Law

("CPL") § 440.10.  Dkt. 1 at 3; Dkt. 9 at 21.  Stone claimed that he received ineffective

assistance of counsel due to his lawyer's failure to subpoena Stone's employment

records for the night of November 11, 2008, into the morning of November 12, 2008,

which was one of the dates on which Stone sexually abused M.  Dkt. 8-3 at 4; Dkt. 9 at

21.  Those records showed Stone clocking in to work at 7:58 p.m. and clocking out at

3:01 a.m., which Stone maintained provided him with an alibi.  Dkt. 8-3 at 4.  Stone

argued that any error by defense counsel in failing to subpoena those records was

prejudicial, given the records' exculpatory nature and that the November 11 incident

was the "only . . . specific date alleged in the prosecution's case in chief."  *Id.* at 5.

On November 14, 2019, the People opposed Stone's § 440.10 motion.  *Id.* at

7-31.  First, the prosecution noted that Stone did not include an affidavit from trial

counsel "substantiating or tending to substantiate essential facts alleged" as required by

CPL § 440.30(4)(b), and that the § 440.10 motion made allegations contradicted by the

record, *see* CPL § 440.30(4)(d); Dkt. 8-3 at 11.  For instance, the trial record showed that

M. also testified about a specific incident on July 4, 2009, which contradicted Stone's

contention that the prosecution only presented the November 11 incident at trial. Dkt. 8-3 at 11. Even if Stone's claim was not procedurally barred by those deficiencies, the prosecution further argued that the claim was meritless because Stone could not meet his burden of demonstrating that defense counsel's choice not to subpoena the records was not a sound strategic decision. *See id.* at 26-29.

The trial court ordered a hearing on the issue to take place on December 15, 2019. *Id.* at 32-33. Subsequently, the court held fact-finding hearings on January 9, 14, and 22, 2020. *Id.* at 34. Trial counsel Peter Brill, Angela Stroud, who was one of Stone's girlfriends at the time of trial, Michael Callahan, the director of corporate security for P.C. Richard & Sons, and Stone testified at the hearings. Dkt. 9 at 22-23. Brill testified that he knew of Stone's employment with P.C. Richard & Sons and chose not to request his shift records. Dkt. 8-3 at 116.

On February 25, 2020, Stone moved to "amend and renew" his § 440.10 motion to include additional claims of actual innocence. *Id.* at 34. On March 11, 2020, the People responded, not opposing the motion with respect to the addition of actual innocence claims. *Id.* The court thereafter granted the application to add claims. *Id.* at 59. The parties subsequently briefed the new claims in letters to the trial court dated March 12, 2020 (Stone, *id.* at 34-43) and May 15, 2020 (the People, *id.* at 44-58).

On May 18, 2020, the Suffolk County Supreme Court (Cohen, *J.*) denied Stone's amended § 440.10 motion in all respects. *Id.* at 59-61. The court rejected Stone's

ineffective assistance of counsel claim because, "in light of the total record," trial counsel's failure to subpoena the November 11 records was not "sufficiently egregious to compromise the fairness of the trial." *Id.* at 60-61.  The court also rejected Stone's actual innocence claim because Stone "failed to establish by clear and convincing evidence," in light of the proof at trial, including M.'s testimony, "that he was factual[ly] innocent of the crimes involved." *Id.* at 61.

The Appellate Division, Second Department denied leave to appeal the trial court's decision.  *People v. Stone*, No. M271798 (2d Dep't July 10, 2020) ("*Stone III*"); *see also* Dkt. 9 at 25.

## III.    *The Petition*

In the Petition, Stone seeks habeas relief on various grounds, some of which he raised on direct appeal.  Dkt. 1 at 5-10.  Respondent filed its opposition on March 26, 2021.  Stone did not file a reply.

## *DISCUSSION*

## I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases).  Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling

13

that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review.  *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal).  If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

## II.    *Analysis*

In his Petition, Stone contends that (1) the evidence at trial was legally insufficient; (2) trial counsel was ineffective at the pre-trial investigation stage, during trial, and at sentencing; and (3) the prosecutor committed misconduct during summation.  I address each claim in turn.

### A.    *The Sufficiency of the Evidence Claim*

First, Stone argues that there was insufficient evidence at trial to support his conviction.  Dkt. 1 at 5.  The Appellate Division considered the claim on direct appeal and concluded that CPL § 470.05(2) procedurally barred the challenge because Stone failed to preserve it for appellate review.  *See Stone I*, 125 N.Y.S.3d at 868.  The

Appellate Division further noted, however, that Stone's contentions with respect to the sufficiency of the evidence were without merit.  *Id.*

Habeas relief is thus not available to Stone for his sufficiency of the evidence claim.  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar."  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Appellate Division clearly and expressly stated that Stone's sufficiency of the evidence claim was unpreserved for appellate review.  *Stone I*, 125 N.Y.S.3d at 868.

Moreover, Stone has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

Stone's sufficiency of the evidence claim fails on the merits in any event. Defendants in a criminal trial may be convicted only upon proof establishing their guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 309 (1979).  When reviewing a claim that the evidence introduced at trial was insufficient to sustain a defendant's conviction, the reviewing court applies the standard set forth in *Jackson* to

15

determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citation omitted).  In doing so, the court defers to the jury's assessments of both "the weight of the evidence [and] the credibility of witnesses."  *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted). Furthermore, the court "must look to state law to determine the elements of the crime." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).  A "[p]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence."  *Id.* (internal quotation marks and citation omitted).  Indeed, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge only if the state court decision was "objectively unreasonable."  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citation omitted).

The Appellate Division held that, "[v]iewing the evidence in the light most favorable to the prosecution . . . , we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt."  *Stone I*, 125 N.Y.S.3d at 868.  The Appellate Division further determined that upon reviewing the record, "we are satisfied that the verdict of guilt was not against the weight of the evidence."  *Id.*  The Appellate Division's determination is entitled to substantial deference, and given the evidence presented at trial, the court's determination was not unreasonable.

The evidence presented at trial detailing Stone's years of sexual abuse of M. was, as the trial court noted at sentencing, "extremely overwhelming." Dkt. 8-1 at 1445.  I agree.  Given the nature of the crimes Stone committed -- which involved abusing M. when no one else was present -- there was little direct evidence at trial beyond M.'s own testimony.  M., however, testified in detail and at length, and the jury found her credible.  Moreover, there was substantial evidence corroborating her testimony.  On this record, a reasonable jury could very well conclude beyond a reasonable doubt that Stone sexually abused M. in the manner and during the times she alleged.

For instance, Detective Morales testified that she obtained school records from Brentwood Middle School that confirmed dates M. mentioned in her retelling of Stone's abuse.  *Id.* at 1101-02.  Detective Morales met with F. to verify certain details M. mentioned during her initial interview with police.  *Id.* at 1106.  Detective Morales also obtained photographs of the family dog that M. stated Stone had strangled.  *Id.* at 1109. She also confirmed that, consistent with M.'s testimony about one instance of sexual abuse in the Brentwood home, there was a Pathmark grocery store within walking distance of the house.  *Id.* at 1112.  Detective Morales also obtained the registration and photos of Stone's car, where M. claimed that Stone would abuse her.  *Id.* at 1113.  She made efforts to contact two of M.'s childhood friends whom M. had told about the abuse but could not ultimately reach them.  *Id.* at 1106-08.

M.'s mother, F., corroborated other details in M.'s story.  She confirmed that Stone paid special attention to M. compared to the other children in the home, and that he only ever gave M. presents like a $100 bill.  *Id.* at 840.  F. also confirmed that Stone would routinely take M. on errands -- to the laundromat and the grocery store, *id.* at 745 -- which aligned with M.'s testimony that Stone would drive her to parking lots on those errands and abuse her in the back of the car.  *Id.* at 887-90.  Finally, testimony by expert witnesses trained in childhood sexual abuse helped explain M.'s delay in reporting her abuse; Dr. Meltzer testified that children "very, very commonly delay disclosing abuse."  *Id.* at 1204.  The compelling evidence at trial was sufficient to support the jury's determination that M.'s testimony was credible, and that Stone was guilty of the charged crimes.  The Appellate Division's determination to that effect was certainly reasonable.  Thus, this claim provides no basis for federal habeas relief.

### B.    *The Ineffective Assistance of Counsel Claims*

Nor is Stone entitled to habeas relief on his claims that trial counsel was ineffective at various stages of the case, namely during (1) the pre-trial investigation period; (2) summation; and (3) sentencing.  *See* Dkt. 1 at 7, 10.  I address Stone's ineffective assistance of counsel claims together.

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating

18

a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (collecting cases). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable . . . ." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation . . . ." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance. *See Alvarez*, 125 N.E.3d at 120.

For the reasons that follow, and in light of the multi-day post-conviction hearing that the Supreme Court held on the issue where defense counsel provided detailed testimony about his trial strategy, Stone has failed to meet his burden of proving that trial counsel was ineffective during any of the three stages of the proceedings that he challenges.

### 1. *Pre-Trial Investigation and Sentencing*

In Ground Two of the Petition, Stone argues that defense counsel "failed to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case." Dkt. 1 at 7. In Ground Four of the Petition, Stone claims that at sentencing, defense counsel "failed to effectively speak on behalf of [Stone]" on various mitigating factors. *Id.* at 10. Stone did not present either claim in state court. *See* Dkt. 9 at 72-73. Accordingly, the claims are unexhausted and habeas review is not available. *See* 28 U.S.C. § 2254(b)(1)(A).

Moreover, Stone has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citation omitted); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

In any event, Stone's claim with respect to ineffective assistance of counsel at the pre-trial investigation stage fails on the merits. If a habeas petitioner's

unexhausted claim is "plainly meritless, the court may deny the claim on the merits

notwithstanding the petitioner's failure to exhaust." *Ortiz v. Heath*, No. 10-cv-1492

(KAM), 2011 WL 1331509, at *14 (E.D.N.Y. Apr. 6, 2011) (citing 28 U.S.C. § 2254(b)(2));

*see, e.g.*, *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).  Stone argues, in a wholly conclusory

manner, that defense counsel "made no efforts to secure information" prior to trial.  Dkt.

1 at 7.  Thus, even though Stone's pre-trial investigation claim is unexhausted, it may be

dismissed on the merits because Stone has not met his burden of providing the Court

with "sufficiently precise information . . . as to what the investigation would have

produced." *Duren v. Lamanna*, No. 18-cv-7218 (JS), 2020 WL 509179, at *21 (E.D.N.Y. Jan.

30, 2020) (citations omitted).

        Stone's ineffective assistance claim with respect to sentencing does not

fare any better on the merits, and it may also be dismissed as plainly meritless despite

being unexhausted.  Stone claims that at sentencing, trial counsel was ineffective for

failing to address "such factors as [Stone's] past good behavior, his family situation, his

cooperation with the police . . . and [his cerebral palsy]." Dkt. 1 at 10.  Stone argued that

trial counsel was "constructively absent at sentencing."  Dkt. 1-1 at 3.  But the sentencing

record belies these claims.  Indeed, the record shows that defense counsel advocated

strongly at sentencing, detailing various reasons why Stone should be sentenced to less

than the maximum term of imprisonment.  *See* Dkt. 8-1 at 1445-48.  Thus, Stone's

ineffective assistance claim as to defense counsel's performance at sentencing also fails.

### 2. *Summation*

The Appellate Division addressed and rejected on the merits Stone's ineffective assistance of counsel claim with respect to summation, holding that "defense counsel's failure to object to [the prosecutor's statements during summation] did not constitute ineffective assistance of counsel." *Stone I*, 125 N.Y.S.3d at 869.  That determination was objectively reasonable under state and federal law.  On direct appeal, the Appellate Division found that "since nearly all of the challenged remarks were not improper, defense counsel's failure to object to them did not constitute ineffective assistance of counsel." *Id.*  Accordingly, and as discussed in further detail *infra*, the prosecutor's summation was not unfairly prejudicial, and defense counsel's failure to object to the prosecutor's statements during summation did not constitute ineffective assistance of counsel.  Stone's claim with respect to defense counsel's performance during summation must be dismissed.

### C. *The Prosecutorial Misconduct Claim*

Finally, Stone argues that the prosecutor committed misconduct during summation.  The Appellate Division considered the claim on direct appeal and concluded that CPL § 470.05(2) procedurally barred the challenge because Stone failed to preserve it for appellate review.  *Id.*  The Appellate Division further noted, however,

that Stone's contentions with respect to any alleged prosecutorial misconduct during summation were without merit.  *Id.*

Habeas relief is thus not available to Stone for his prosecutorial misconduct claim.  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly" state that its judgment rests upon a state procedural bar.  *Whitley*, 642 F.3d at 286 (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Appellate Division clearly and expressly stated that Stone's prosecutorial misconduct claim was unpreserved for appellate review.  *Stone I*, 125 N.Y.S.3d at 869.  Moreover, Stone has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered.  *See Edwards*, 529 U.S. at 451 (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal*, 633 F.3d at 104.

Stone's prosecutorial misconduct claim fails on the merits in any event.  As the Appellate Division noted, "[t]he prosecutor's remarks, in nearly every instance, were responsive to defense counsel's summation, constituted fair comment on the evidence, or were within the broad bounds of rhetorical comment permissible in closing arguments."  *Stone I*, 125 N.Y.S.3d at 869 (citations omitted).  The Appellate Division's determination constitutes an adjudication on the merits, *see Johnson v. Williams*, 568 U.S.

23

298, 301 (2013), and is entitled to "substantial deference." *Fischer*, 780 F.3d at 560.  This

Court will not disturb the Appellate Court's finding unless Stone can show that it

"involved an unreasonable application of[] clearly established Federal

law."  28 U.S.C. § 2254(d)(1).  Stone cannot meet this high burden with respect to his

prosecutorial misconduct claim.

       "[A] criminal conviction is not to be lightly overturned on the basis of a

prosecutor's comments standing alone . . . in an otherwise fair proceeding." *United

States v. Young*, 470 U.S. 1, 11 (1985).  "[I]t 'is not enough that the prosecutors' remarks

were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168,

181 (1986) (citation omitted).  "In order to reach the level of a constitutional violation, a

prosecutor's remarks must 'so infect the trial with unfairness as to make the resulting

conviction a denial of due process.'" *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)

(alteration adopted) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

"Whether a prosecutor's improper remarks result in a denial of due process depends

upon whether the remarks caused 'substantial prejudice' to the defendant." *United

States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989) (collecting cases).  To determine

whether "substantial prejudice" exists, the court "must assess how prejudicial the

prosecutor's conduct was, what measures, if any, the trial court used to cure the

prejudice, and whether conviction was certain absent the prejudicial conduct."

*Gonzalez*, 934 F.2d at 424 (citation omitted).

Even if, as Stone argues, the prosecutor did improperly "interject personal opinions concerning [the] veracity of witnesses" during summation, "the error was not so egregious as to have deprived the defendant of a fair trial." *Stone I*, 125 N.Y.S.3d at 869. Indeed, the prosecutor's summation responded, in large part, to defense counsel's argument during closing that M. lied about her initial report of the abuse and continued to lie on the stand during trial. *See* Dkt. 8-1 at 1365, 1367.

Defense counsel devoted his closing argument to calling M.'s credibility into question. *See id.* at 1346-65. He stated that M. was "making things up out of whole cloth." *Id.* at 1355. The prosecutor's summation responded to defense counsel's argument by asking the jury to consider why M. would decide to fabricate a detailed story about years of sexual abuse, *id.* at 1372-74, and emphasizing the overall consistency of M.'s testimony despite her age at the time of abuse. *Id.* at 1382. Even assuming some of the prosecutor's statements crossed the line, they were not so improper as to deprive Stone of a fair trial. The trial court emphasized during its charge to the jury that "[the jury] alone determine[s] the truthfulness and accuracy of the testimony of each witness." *Id.* at 1410. Thus, Stone did not suffer prejudice from comments by the prosecutor about the truthfulness of witnesses.

Stone also claims that the prosecutor improperly appealed to the jury "based on passion or prejudice rather than fact." Dkt. 1 at 8. Stone does not cite to any

25

examples in his Petition, but in support of the same claim on direct appeal, Stone

alleged that the prosecutor improperly appealed to jurors' sympathies by stating:

> You saw [M.'s] face and you heard her voice. There is no
> mystery here. Her stepfather sexually abused her for years.
> How did she feel? How did she feel? She took that witness
> stand and detailed in a public courtroom years of sexual
> abuse in front of the perpetrator (indicating). We asked you
> about normal things. Nothing she was asked to speak about
> was normal. But she did it. She came in. She followed
> through. For a year, she followed through and she was
> consistent, and she detailed for you every excruciating detail
> she recalled. Dkt. 8-2 at 19-20 (quoting Dkt. 8-1 at 1369).

The prosecutor's statement was within the bounds of acceptable argument during

summation. *See People v. Gillespie*, 831 N.Y.S.2d 83, 84 (2d Dep't 2007) (noting that

statements during summation are permissible if they are "fair comment on the evidence,

permissible rhetorical comment, or responsive to the defense counsel's summation").

As discussed above, the prosecutor's summation was largely responsive to

defense counsel's summation, which argued that M. was making her story up "out of

whole cloth." Dkt. 8-1 at 1355. Thus, it was appropriate for the prosecutor to argue that

M. was credible, that her testimony was "consistent," full of "excruciating detail[s]" of

abuse, and that it was emotionally difficult for her to take the stand at trial. *Id.* at 1369.

The prosecutor did not, however, go so far as to inject his personal opinion of M.'s

credibility into his summation. *See People v. Moye*, 907 N.E.2d 267, 267 (N.Y. 2009)

(noting that a prosecutor "may not mak[e] himself an unsworn witness" by including in

his summation "vouching remarks" regarding a witness's credibility (citations omitted)). In substance and tone, the prosecutor's comment was an appropriate response to defense counsel's claim that M. had fabricated her story and lied on the stand. Accordingly, habeas relief on this ground is unavailable.

Stone's remaining contentions with respect to prosecutorial misconduct -- that the prosecutor (1) "comment[ed] on defendant's failure to testify"; (2) "refer[red] to evidence not in record"; and (3) "impl[ied] that the prosecutor believes that the defendant is guilty of the crime charged," Dkt. 1 at 8 -- are unexhausted.  Stone did not raise these grounds of prosecutorial misconduct on direct appeal.  *See* Dkt. 8-2 at 16-24. In any event, these unexhausted claims may be dismissed because they are plainly meritless.  Stone does not provide any examples or factual support in the record for his claims that the prosecutor commented on his failure to testify, referred to evidence outside the record, or implied that the prosecutor believed Stone to be guilty.  Instead, a review of the prosecutor's summation shows that he appropriately responded to the defense's summation, *see, e.g.*, Dkt. 8-1 at 1379 ("Mr. Brill is saying each and every one of these descriptions of sexual abuse were fabricated out of thin air.  Can you remotely get on board with that?"); made permissible rhetorical statements to the jury, *see, e.g.*, *id.* at 1370 ("Folks, why would [M.] put herself through all of this if it didn't happen, if he did not sexually abuse her, for what?"); and emphasized the role of the jury in evaluating the credibility of witnesses and following the court's instructions on the law, *see, e.g.*, *id.*

at 1394 ("[Y]ou were selected as jurors because you have the ability to evaluate the credibility of the witnesses that come before you."); *id.* at 1397 ("[Y]ou can't base your verdict on sympathy for [M.] either."). *See generally id.* at 1366-1401. In light of the trial record, Stone's claims are plainly without merit and must be rejected.

## CONCLUSION

Stone has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Stone has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Stone at his last address of record.

SO ORDERED.

Dated:      New York, New York
            January 11, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation